FILED
2019 Apr-29 PM 01:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KEVEN ROBINSON,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:19-cv-00064-RDP |
| **VIRGINIA COLLEGE LLC, et al.,** | } |
| **Defendants.** | } |

## MEMORANDUM OPINION

This case is before the court on Defendants' Motion to Compel Arbitration and to Strike Plaintiff's Class Action Claims. (Doc. # 3). The Motion has been fully briefed (Docs. # 6-7, 10, 13) and is ripe for review. After careful review, and for the reasons explained below, Defendants' Motion is due to be denied.

**I.    Background**

Plaintiff Keven Robinson was employed by Virginia College. But before that, he was a student at its Birmingham, Alabama campus from 2000-2011. (Doc. # 1-1 at ¶¶ 14-15). He obtained an Associate's Degree in Therapeutic Massage, a Bachelor's Degree in Health Services Management, and a Masters of Business Administration. (*Id*. at ¶ 15).

In 2015, Plaintiff accepted employment with Defendants. (Doc. # 6 at 2). Defendants assert that, as part of this employment relationship, Robinson signed an arbitration agreement consenting to arbitration of *all* potential claims between the parties. (Doc. # 3 at 2). The arbitration agreement contains the following relevant language:

> 1. <u>The Mutual Agreement to Arbitrate</u>. …[T]he parties agree that any dispute, controversy or claim[] arising out of or related to this Agreement, the employment relationship between the parties, or the termination of the employment

1

relationship shall be resolved by binding arbitration administered by the American Arbitration Association in accordance with its Employment Arbitration Rules. The agreement to arbitrate includes any claims that the Company [Defendants] may have against the Employee [Plaintiff] or that Employee may have against the Company or against any of its officers, directors, employees, agents, or parent, subsidiary, or affiliated entities, except as set for below, including any claims that could have been brought before any court….**BY ENTERING THIS AGREEMENT, THE PARTIES HEREBY WAIVE THEIR RIGHT TO HAVE ANY DISPUTE, CLAIM, OR CONTROVERSY DECIDED BY A JUDGE OR JURY IN A COURT**.

…

4. <u>Class/Collective Action Waiver</u>. **BY ENTERING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS AND/OR COLLECTIVE PROCEEDING**.

(Doc. # 3-1 at 2, 3) (emphasis in original). Additionally, the agreement mandates that arbitration "will be administered pursuant to the American Arbitration Association Employment Arbitration Rules," and any decision "rendered by the arbitrator shall be written [in] accordance with the American Arbitration Association Employment Arbitration Rules." (*Id*. at 3). The agreement also advises the parties that they may obtain a copy of the Rules from their local HR representative. (*Id*.). Finally, the entire agreement (including the signature block) refers to Plaintiff as the "Employee." (*Id*. at 4).

The backdrop of Plaintiff's class claims relates to the suspension of Defendants' academic accreditation on December 4, 2018. (Doc. # 1 at ¶ 2). The following morning, Defendants closed all campuses nationwide. (*Id*.). That afternoon, Plaintiff filed his Class Action Complaint, in which he alleges the following claims: negligent and wanton operation, management, and marketing of Defendants' degree programs (Counts One and Two); a violation of the Alabama Deceptive Trade Practices Act (Count Three); breach of implied warranty (Count Four); breach of contract (Count Five); unjust enrichment (Count Six); and injunctive relief

requiring Defendants to provide either education at accredited institutions free of charge or alternative tuition at accredited institutions free of charge (Count Seven). (*Id*. at 7-14).

Relying on the arbitration agreement quoted above, Defendants filed its Motion to Compel Arbitration and to Strike Plaintiff's Class Action Claims on January 11, 2019. (Doc. # 3). Plaintiff argues that the arbitration agreement, which governs disputes relating to or arising out of his employment relationship with Defendants, does not cover the subject class action claims dealing with his previous enrollment as a student. (*See generally* Doc. # 6).

**II.     Analysis**

The Federal Arbitration Act (FAA) provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This provision 'reflect[s] both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract.'" *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011)). In fact, the policy favoring arbitration is so strong that any doubts surrounding the arbitrability of the dispute must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Costr. Corp.*, 460 U.S. 1, 25 (1983). That being said, the FAA "does not require parties to arbitrate when they have not agreed to do so." *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 817 (11th Cir. 1993) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Stanford Univ.*, 489 U.S. 468, 478 (1989)).

Unless the parties "clearly and unmistakably provide otherwise," whether they have entered into an agreement to arbitrate is a question reserved for the district court, not the arbitrator. *AT&T Technologies, Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649 (1986). Often referred to as "gateway matters," it is usually for the district court to consider "(1) whether there

is a valid agreement to arbitrate, and (2) whether the dispute in question falls within the scope of that agreement." *King v. Cintas Corp.*, 920 F. Supp. 2d 1263, 1267 (N.D. Ala. 2013); *see also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003).[1] State-law principles regarding ordinary contract formation and interpretation guide the court's determination. *Id*.

Plaintiff focuses his opposition on the second gateway question. He argues that even if he agreed to arbitration as an employee, the agreement does not apply to the dispute in question, which is based on his enrollment as a student, not his employment. For the reasons explained below, the court agrees and finds that the dispute is not within the scope of the arbitration agreement and the class action waiver is inapplicable. Accordingly, Defendants' Motion is due to be denied.

### A. Plaintiff's Class Action Claims Do Not Fall Within the Scope of the Arbitration Agreement

Plaintiff argues that his claims arising out of his enrollment as a student at Defendants' institution are beyond the scope of the arbitration agreement because the agreement relates *only* to Plaintiff's employment with Defendants. To support this assertion, Plaintiff presents an argument based on the plain text of the agreement. For example, he notes that in the introductory paragraph and in the signature block, he is referred to as the "Employee." (Docs. # 6 at 3; 3-1 at 1, 4). He also cites the following employment-centric language in the arbitration agreement:

> "<u>The Mutual Agreement to Arbitrate</u>. Except for the claims set forth in the paragraph below, *the parties agree that any dispute, controversy or claim[] arising out of or related to this Agreement, the employment relationship between*

---

[1] Though these gateway questions may be decided by an arbitrator if the parties agree to have an arbitrator decide them, *see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010), the Supreme Court has held that courts should not lightly conclude the parties agreed to arbitrate gateway questions of arbitrability. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.") (brackets and internal quotation marks omitted). Here, Defendants have not argued that the parties agreed to arbitrate the scope of their arbitration agreement, and they have not moved the court to compel the parties to arbitrate that question. Instead, Defendants have only moved the court to compel the parties to arbitrate Plaintiff's underlying claims in this lawsuit. For that reason, the court must decide whether Plaintiff's claims fall within the scope of the arbitration agreement.

*the parties, or the termination of the employment relationship shall be resolved by binding arbitration* administered by the American Arbitration Association *in accordance with its Employment Arbitration Rules*."

(Doc. # 6 at 3; Doc. # 3-1 at ¶ 1) (emphasis added).

"Applicable Rules and Arbitration Fees. Arbitration will be administered pursuant to the American Arbitration Association Employment Arbitration Rules….You can also obtain a copy of the American Arbitration Association Employment Arbitration Rules from your local HR representative."

(Doc. # 6 at 3; Doc. # 3-1 at ¶ 6).

"Any decision or award rendered by the arbitrator shall be written and in accordance with the American Arbitration Association Employment Arbitration Rules."[2]

(Doc. # 6 at 4; Doc. # 3-1 at ¶ 7).

"Exhaustion of Administrative Remedies. This agreement shall not be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration, including administrative charges filed with a federal, state, or local administrative agency (e.g. the Equal Opportunity Commission ('EEOC'), the National Labor Relations Board ('NLRB'), the U.S. Department of Labor ('DOL')."

(Doc. # 6 at 4; Doc. # 3-1 at ¶ 2).

"This Agreement shall…survive after the employment relationship terminates."

---

[2] The American Arbitration Association Employment Arbitration Rules ("Rules") explicitly state that the Rules "have been developed for employers and employees who wish to use a private alternative to resolve their disputes, enabling them to have complaints heard by an impartial person with expertise in the employment field." (Doc. # 6-1 at 8). The Rules also state that the "dispute resolution procedures…were developed for arbitration agreements contained in employee personnel manuals, an employment application of an individual employment agreement, other types of employment agreements, or can be used for a specific dispute." (*Id*. at 15).

Defendants argue that the arbitration agreement's reference to the Rules should not be interpreted to suggest that only employment-related claims are arbitrable under the agreement. (Doc. # 7 at 5-6). Instead, Defendants highlight the court's power to sever these provisions from the arbitration agreement under the severance clause, which allows "overbroad, invalid, or unenforceable" provisions to be severed from the agreement. (Doc. # 3-1 at 3-4). Defendants also express their willingness to waive this portion of the arbitration agreement so that arbitration may be conducted pursuant to the AAA Consumer Arbitration Rules, rather than the Employment Arbitration Rules. (Doc. # 7 at 6) (citing *Ex parte Celtic Life Ins. Co.*, 834 So. 2d 766, 768-69 (Ala. 2002)). The court declines to exercise its severance power because requiring that arbitration proceed pursuant to the Rules is not an overbroad, invalid, or unenforceable provision triggering the application of the severance clause. But, even without the arbitration agreement's reference to the Rules, the court finds that the agreement contains limiting language narrowing the scope of arbitration to claims "arising out of or related to this Agreement, the employment relationship between the parties, or the termination of the employment relationship." (Doc. # 3-1).

(Doc. # 6 at 4; Doc. # 3-1 at ¶ 1).

> "At-will Employment. The terms and conditions described in this Arbitration Agreement are not intended to, and shall not, create a contract of employment for a specific duration of time. Employment with the Company is at-will and voluntarily entered into and Employee and the Company are free to end that relationship at any time, for any reason, and with or without prior notice."

(Doc. # 6 at 4; Doc. # 3-1 at ¶ 9).

Plaintiff contends that these excerpts, read together, limit "the claims subject to arbitration to those between an employee and an employer concerning that employment relationship." (Doc. # 6 at 8).

Defendants' primary argument is that the use of the phrase, "*any claims* that…the Employee may have against the Company," means that the arbitration agreement covers *all* disputes between Plaintiff and Defendants, not just employment-related disputes. (Doc. # 7 at 2-5) (citing *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017) (delegation clause in arbitration agreement directing arbitrator to resolve "any dispute" relating to gateway issues means "all" disputes on gateway issues)). Defendants point to *Haasbroek v. Princess Cruise Lines* and *Doe v. Princess Cruise Lines* for the proposition that "an arbitration provision in an employment contract could cover claims that are not related to, or arising from, the plaintiff's employment." *Haasbroek*, 286 F. Supp. 3d 1352, 1359 (S.D. Fla. 2017), *appeal dismissed*, 2018 WL 3545908 (11th Cir. May 10, 2018); *Doe*, 657 F.3d 1204, 1218 (11th Cir. 2011). But, such a conclusion hinges on the absence of limiting language in the arbitration agreement. *Id*.

Both *Haasbroek* and *Doe* considered the arbitrability of a cruise ship employee's tort claims arising from an alleged after-hours rape that occurred away from the employee's place of employment aboard the ship. *Haasbroek*, 286 F. Supp. 3d at 1355-56; *Doe*, 657 F.3d at 1211-13. However, the cases resulted in different outcomes due to the presence of limiting language in the

6

*Doe* arbitration agreement, language which was noticeably absent from the *Haasbroek* arbitration agreement. The arbitration agreement in *Doe* provided that the parties agreed to arbitrate "any and all disputes, claims, or controversies whatsoever…*relating to or in any way arising out of or connected with the Crew Agreement, these terms, or services performed for the Company*." *Doe*, 657 F.3d at 1214-15 (emphasis added). The Eleventh Circuit concluded that "the plain language of the arbitration provision imposes the limitation that, to be arbitrable, the dispute between Doe and the cruise line must relate to, arise from, or be connected with her crew agreement or the employment services that she performed for the cruise line." *Id.* at 1217-18. By contrast, the arbitration agreement at issue in *Haasbroek* did not contain any such limiting language:

> [A]ny and all disputes, claims or controversies whatsoever, whether in contract, regulatory, tort or otherwise, including but not limited to, constitutional, statutory, common law, intentional tort and equitable claims, as well as Jones Act and Wage Act claims, claims for negligence, unseaworthiness, maintenance and cure, failure to provide prompt, proper and adequate medical care, personal injury, death or property damage and whether accruing prior to, during or after the expiration of this Agreement (collectively "Disputes"), shall be resolved by final and binding arbitration.

*Haasbroek*, 286 F. Supp. 3d at 1359 (S.D. Fla. 2017). The court found that in the absence of limiting language which so narrowed the agreement's scope, this broad provision -- "any and all disputes, claims or controversies whatsoever" -- was "sufficient to compel arbitration of claims premised on after-hours, off-duty, rape." *Id*. at 1360.

After careful review, the court determines that the arbitration agreement here more closely resembles the agreement in *Doe* because it contains the following limiting language.

> [T]he parties agree that any dispute, controversy or claim[] **arising out of or related to this Agreement, the employment relationship between the parties, or the termination of the employment relationship** shall be resolved by binding arbitration administered by the American Arbitration Association in accordance with its Employment Arbitration Rules. The agreement to arbitrate includes **any**

7

**claims** that the Company [Defendants] may have against the Employee [Plaintiff] or that Employee may have against the Company or against any of its officers, directors, employees, agents, or parent, subsidiary, or affiliated entities, except as set for below, **including any claims that could have been brought before any court**."

(Doc. # 3-1 at ¶ 1) (emphasis added). While the second sentence certainly refers to "any claims that the Company may have against the Employee," it must be read in context with the limiting language that immediately precedes it. That language indicates that the agreement to arbitrate relates to disputes arising out of the "[a]greement, the employment relationship between the parties, or the termination of the employment relationship." (*Id*.). Thus, contrary to Defendants' assertion, the language in the subject arbitration agreement relates to any and all employment-based or employment-related claims. It simply is not broad enough to govern *all* claims between the parties, regardless of the context. Any other reading would render the first sentence meaningless.[3]

Additionally, Defendants argue that the first and second sentences of the arbitration agreement describe two different types of claims. (Doc. # 13 at 2). They assert that the first sentence, expressing the parties agreement that "any dispute, controversy or claim[] arising out of or related to this Agreement, the employment relationship between the parties, or the termination of the employment relationship," was drafted to "capture claims against

---

[3] Defendants' reliance on *Johnson v. Springleaf Fin. Services*, 2015 WL 4985472 (August 20, 2015) (Proctor, J.) is also misplaced. In *Johnson*, the plaintiff applied for a loan with the defendant and signed an arbitration agreement agreeing to arbitrate "all claims and disputes between us," which "include[d], but [was] not limited to, all claims and disputes arising out of, in connection with, or relating to…any claim based on or arising under federal, state, or local law, statute, regulation, ordinance, or rule." *Id*. at *1. The court found that the plaintiff's "claim under the Fair Credit Reporting Act that [d]efendant disclosed his personal information in connection with a loan to another customer [was] clearly within the scope of this agreement." *Id*. at *2. But in *Johnson*, the agreement did not contain language that purported to limit the agreement to disputes relating only to the plaintiff's loan. And, again Defendants' argument ignores the limiting language in the subject arbitration agreement. Unlike the *Johnson* arbitration agreement, the agreement here states that "any dispute, controversy or claim[] *arising out of or related to this Agreement, the employment relationship between the parties, or the termination of the employment relationship* shall be resolved by binding arbitration" (Doc. # 3-1) (emphasis added). Here, the scope of the arbitration agreement is not broad enough to encompass Plaintiff's class action claims, which arise out of Plaintiff's role as a student at Defendants' institution, rather than an employee of Defendants.

8

nonsignatories,"[4] while the second sentence was drafted to govern "party-specific claims" (claims between Plaintiff and Defendants as the signatories to the agreement). (*Id*.). Specifically, Defendants point to the absence of the "arising out of or related to" limiting language in the second sentence to argue that this omission signifies the drafter's intent *not* to limit the scope of claims subject to arbitration between Plaintiff and Defendants. (*Id*.). The court finds this contention unpersuasive.

The cases cited by Defendants -- *Escobal* and *Grandville* -- lend no support to their argument because both cases involved an entirely different factual scenario than the case at bar. In those cases, the court applied the principle of equitable estoppel to prevent the plaintiff from contesting a non-signatory defendant's standing to invoke the agreement where (1) the language of the agreement was broad enough to encompass claims against non-parties and (2) the claims against the non-parties were inextricably intertwined with the claims made against signatories to the contract. *See Escobal*, 482 Fed. Appx. at 476; *see also Grandville*, 2011 WL 13232127, at *3. True, both cases determined that the language, "any dispute arising out of or related to this Agreement," captured the plaintiff's disputes against non-parties. *Id*. However, the mere presence of such language in the subject arbitration agreement does not automatically limit the first sentence's applicability to *only* claims between Plaintiff and non-party defendants. In fact, as previously discussed, this language serves to narrow the scope of the arbitration agreement to claims "arising out of or related to this Agreement, the employment relationship between the parties, or the termination of the employment relationship." (Doc. # 3-1). Simply put, the court disagrees with Defendants' interpretation that the first and second sentences of the arbitration agreement describe two different types of claims.

---

[4] Citing *Escobal v. Celebration Cruise Operator, Inc.*, 482 Fed. Appx. 475, 475-76 (11th Cir. 2012) (interpreting similar clause in employment arbitration agreement to include claims against non-signatories); *Grandville v. Mid-South Petroleum*, 2011 WL 13232127, at *3 (N.D. Ala. March 1, 2011) (same).

Finally, Defendants maintain that the survival clause of the arbitration agreement renders Plaintiff's class claims arbitrable because the claims accrued when Defendants lost accreditation—*after* Plaintiff signed the agreement. (Doc. # 7 at 7). The survival clause provides that the arbitration agreement "shall survive after the employment relationship terminates." (Doc. # 3-1 at 2). But Defendants misapprehend the scope of the arbitration agreement. Plaintiff (quite correctly) does not dispute that the arbitration agreement remained enforceable after the termination of the employment relationship between the parties. (Doc. # 10 at 4). That is, Plaintiff does not attack the duration of the arbitration agreement. Rather, Plaintiff's argument is that the scope of the arbitration agreement (as drafted by Defendants) does not extend to his claims arising out of his prior role as a student. (*Id.*). Plaintiff is (again) correct: the survival clause has no bearing on this dispute.

For the reasons explained above, the court finds that Defendants' Motion is due to be denied because the arbitration agreement does not govern Plaintiff's class action claims arising from his role as a student at Defendants' institution.

### B. Because Plaintiff's Class Claims Fall Outside the Scope of the Arbitration Agreement, the Class Action Waiver Does Not Apply

Defendants aver that even if the arbitration agreement does not cover Plaintiff's class action claims (and, to be clear, it does not), Plaintiff still agreed to the class action waiver for *all* claims against Defendants. (Doc. # 7 at 8). As noted above, the class action waiver in the agreement reads as follows:

> Class/Collective Action Waiver. **BY ENTERING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS AND/OR COLLECTIVE PROCEEDING**.

(Doc. # 3-1 at 3).

Although Defendants correctly note that the Eleventh Circuit has upheld class action waivers contained in arbitration agreements,[5] they have not cited a single case where a court upheld a class waiver after deciding that the scope of the agreement did not encompass the plaintiff's claims. Indeed, each of the four cases Defendants cite involves class action waivers contained in agreements that governed the dispute between the parties. *See Palmer v. Convergys Corp.*, 2012 WL 425256, at *2-3 (M.D. Ga. February 9, 2012) (upholding a class action waiver contained in an employment application in a dispute between employees and their former employer over uncompensated overtime hours); *see also Tab Lankford v. Carnival Corp.*, 2014 WL 11878384, at *3-6 (S.D. Fla. July 25, 2014) (upholding a class action waiver contained in an online cruise ticket contract in a dispute between passengers and the cruise company relating to the company's maintenance of hot tubs aboard its vessels); *see also Deluca v. Royal Caribbeaan Cruises, Ltd.*, 244 F. Supp. 3d 1342, 1345-49 (S.D. Fla. 2017) (upholding a class action waiver contained in an online cruise ticket contract in a dispute between passengers and the cruise company relating to emotional injuries the passengers allegedly sustained when the ship encountered a winter storm); *see also U1it4LESS, Inc. v. Fedex Corp.*, 2015 WL 3916247, at *3-5 (S.D.N.Y. June 25, 2015) (upholding a class action waiver contained in a pricing agreement between plaintiff and the defendant shipping company relating to the shipping company's billing practices).

Thus, these cases are distinguishable from this one because the courts deciding *Palmer*, *Tab Lankford*, *Deluca*, and *Ulit4LESS* were not called upon to consider the threshold question of whether the plaintiff's claims fell within the scope of the underlying agreement. Here, Plaintiff's

---

[5] *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005); *see also Jenkins v. First Am. Cash Advance of Ga.*, LLC, 400 F.3d 868, 877 (11th Cir. 2005); *see also Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 819 (11th Cir. 2001).

claims do not fall within the scope of the parties' arbitration agreement, *i.e.*, disputes related to the parties' employment relationship. Because Plaintiff's class claims arising from his role as a student (a role that predates the parties' arbitration agreement) are beyond the scope of the employment arbitration agreement, the class action waiver cannot obligate him to pursue his claims individually.

## III. Conclusion

For the reasons explained above, Defendants' Motion to Compel Arbitration and to Strike Plaintiff's Class Action Claims (Doc. # 3) is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this April 29, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE